GEORGE PARISH *vs.* NATHAN W. WARD and others.

In the year 1809, George Parish, an alien, having been empowered by an act of the legislature to take and convey real estate, purchased a large tract of land, including lot No. 687, in the county of Jefferson. The defendant W. purchased of Parish a part of said lot, and took a deed which contained an exception of all mines and minerals, and particularly of all the ore of iron, copper or lead. Parish died in 1826 intestate, and without issue, leaving surviving him his father John Parish, and his brothers George, Charles, Richard and John, all of whom were aliens. In 1817 an act was passed, by the legislature, enabling George to take real estate by purchase or descent. In 1827 he made his will, devising all his estate to J. R. in trust, directing his real estate to be converted into personal estate, and the payment of two bonds held by his brother Richard; and devising the residue of his estate to Richard. He died in 1838. John Parish, the father, died after David's death, and before the death of George. In 1841 the plaintiff, who was the son of Richard, and an alien, was authorized to take and hold real estate. J. R., the trustee under the will, conveyed a large tract of land to the plaintiff, together with all mines and minerals reserved in certain deeds given by David, including the ore bed in question, located on said lot No. 687. In an action brought by the plaintiff to recover damages and to restrain W. and those acting under him from digging and carrying away iron ore from a bed on said lot;

*Held,* 1. That the act of 1807, enabling David Parish to acquire, hold and alienate real estate, invested him with inheritable blood, and clothed him with the power of transmitting his estate to his next of kin.

2. That dying intestate his estate would descend, the same as that of a citizen by birth; and would not escheat; provided an heir capable of taking by descent could be found.

3. That the act authorizing David Parish to take and hold real estate did not assume to qualify, or change, in any respect, the general law of descent; or to remove the barrier of alienism existing against alien heirs. And that therefore John Parish, the father of David, could not inherit from him.

4. That the estate of which David Parish died seised descended to his brother George, by virtue of the act of 1817 clothing him with inheritable power; and that under the provisions of that statute authorizing him to alienate, it was competent for him to make a will disposing of the property.

5. That the trust created by the will of George was valid, under the statute authorizing the creation of a power in trust to sell lands for the benefit of creditors; and that under the execution of the power in trust by J. R. the trustee, the plaintiff acquired a valid title to the bed of iron ore in controversy, and could maintain the action.

DAVID PARISH, an alien, having been empowered by act of the legislature to take and convey real estate, the same

as a natural born citizen, purchased a large quantity of lands, including lot No. 687 in Antwerp in the county of Jefferson, in the year 1809. The defendant Ward purchased of the agent of Parish, by contract, a part of said lot, and after occupying several years took a conveyance, in April, 1826; which deed contained an exception of all mines and minerals, " and particularly all the ore of iron, copper or lead." David Parish died in 1826, intestate and without issue. He left surviving him his father John Parish, and his brothers George, Charles, Richard and John, all of whom were aliens and all were non-residents, except George, who came to this country to reside in the year 1815. In 1817 an act was passed by the legislature enabling George to take real estate within this state, by purchase or descent, the same as a natural born citizen. In 1827 he made his will, devising all his estate to Joseph Rosseel in trust, directing the reduction of the real to personal estate, to pay the expense of administration and two bonds of large amounts held by his brother Richard, and devising the residue of the estate to Richard. He died in 1838. John Parish, the father, died after David's death and before the death of George. In the year 1840 the plaintiff, who was the son of Richard, and an alien, was authorized to take and hold real estate in this state, the same as a natural born citizen.

Under the said will Rosseel, the trustee, conveyed a large tract of land to the plaintiff, together with all mines and minerals reserved in certain deeds given by David, which embraced the ore bed in question, located on said lot No. 687. This action was brought to recover damages, and to restrain the defendant Ward and the other defendants acting under him, from digging and carrying away iron ore from a bed on said lot.

The plaintiff succeeded in the action, at a circuit court held in the county of Jefferson, in December, 1853, before Justice W. F. ALLEN. The defendants appealed from the judgment to this court.

*J. Mullin*, for the defendant.

· *C. G. Myers*, for the plaintiff.

*By the Court*, HUBBARD, P. J.   The important question in this case is as to the plaintiff's title to the mine of iron ore upon lot 687, excepted from the operation of the deed from David Parish to the defendant Ward.   It was conceded on the argument that the exception was good, not repugnant to the granting clause in the deed, and that this action could have been maintained by David had he been living.

The plaintiff deduces his title under the execution of the trust in the will of George Parish, the brother of David, and the uncle of the plaintiff.   The defendants' counsel disputes the title of George, on the ground of the alienage of David. It is insisted that the lands of which David died seised, escheated to the state.   This presupposes that he left no heirs or next of kin capable of inheriting.   The act of the legislature (*Sess. Laws* 1807, *ch.* 21,) enabling David to acquire, hold and alienate real estate in like manner as a natural born citizen, invested him with inheritable blood, and clothed him with the power of transmitting his estate to his next of kin. (*Banks* v. *Walker*, 3 *Barb. Ch. R.* 445.)   Dying intestate, his estate would descend, the same as that of a citizen by birth.   His estate would not, therefore, escheat, provided an heir capable of taking by descent could be found.

It is further insisted by the defendants' counsel, that if there was an escheat, the estate of David descended to his father, John Parish, who was living at his decease.   The father, of course, could not inherit under the general law of descent, being an alien.   If he was possessed of an inheritable quality, it must have been conferred by the act authorizing David to take and transmit real property.   But that act simply empowers the taking and conveying of property by him, in the same manner as a citizen.   It does not assume to qualify or change in any respect the general law of descent;

Parish *v.* Ward.

or to remove the barrier of alienism against alien heirs. It may be that if the act had authorized the taking and holding of real estate, by David and his heirs, his father might have inherited on the ground of a presumed intent on the part of the legislature to extend the inheritance to such heirs as an alien was capable of having. Such seems to be the doctrine in cases of patents or special grants, or property acquired by an alien, under a special law authorizing lands to be taken and held by an alien grantee, to himself and his heirs. (*Goodell* v. *Jackson*, 20 *John.* 707. *Jackson* v. *Elz*, 5 *Cowen*, 314. *Jackson* v. *Adams*, 7 *id.* 367.) In such cases it is held that an alien heir may take. Upon this doctrine John Parish would have inherited from David, if this act had vested the estate in the heirs of David; unless it should be held that such inheritance was interrupted by the capability of George Parish, the brother of David, to inherit, under the general law. Whether any such interruption would exist it is not necessary to decide, inasmuch as it must be held that John Parish cannot inherit.

John Parish not being competent to take by descent, the next question to be determined is, whether the estate of which David died seised, descended to his brother George. That it did so descend, no doubt can be entertained. The act under which George was enabled to acquire real estate, (*Sess. Laws* 1807, *p.* 282,) expressly authorizes him to take, by purchase or by descent, the same as a natural born citizen. This clothed him with ample inheritable power, and he succeeded to all of David's estate.

The fact of the alienage of a common father, could not impede the inheritance between brothers. The inheritance between brothers is immediate. (*McGregor* v. *Comstock*, 3 *Comst.* 408,) George does not trace his inheritable line through the father. It has become a maxim of the law that as between brothers, a father, although a *medium sanguinis* is not a *medium hereditatis.*

Parish *v.* Ward.

It is unnecessary to have a common ancestor, and hence the alienism of such ancestor is not important.

The whole estate having thus legitimately descended to George, it was competent for him under the statute authorizing him to alienate, to make a will.

Under the execution of the trust in his will, by Rosseel, the plaintiff derives title to the bed of iron ore in controversy. It was said that the trust created by the will was invalid, because Richard Parish, the plaintiff's father, was the sole beneficiary. In my judgment the trust is valid under the statute authorizing the creation of a power in trust, to sell lands for the benefit of creditors. Richard was an alien, and could not take by inheritance or devise.

He was a creditor of the testator to a large amount, in two bonds. It was the same in effect as though the residuum of the estate of David had been given to some third person, and not to the creditor. The trust being thus valid, the plaintiff acquired a good title by the conveyance from the trustee, Rosseel. He thus became invested with all the rights and title of David, in the ore in question, and could maintain this action, the same as David could if living. No question was made upon the argument, as to the capacity of the plaintiff to take under the grant. It follows then that the plaintiff was entitled to recover, and the judgment must therefore be affirmed.

[ONEIDA GENERAL TERM, January 1, 1855. *Hubbard, Pratt* and *Bacon,* Justices.]